The **LONG ISLAND RAIL ROAD COMPANY**, Plaintiff,

v.

**BROTHERHOOD OF LOCOMOTIVE ENGINEERS, in its own right and as Representative of Engineers and Motormen in Road and Yard Service, employees of the Long Island Rail Road Company, George L. Clark, A. H. Davis, and R. F. Starck, individually and as General Chairman, Vice Chairman and Secretary-Treasurer, respectively, of the General Committee of Adjustment, Brotherhood of Locomotive Engineers, Long Island Rail Road, as representatives of said Brotherhood and the aforementioned employees, Defendants.**

No. 68–C–418.

United States District Court
E. D. New York.

June 20, 1968.

George M. Onken, Jamaica, N. Y., for plaintiff; James T. Gallagher, Jamaica, N. Y., of counsel.

Edward G. Dougherty, New York City, for defendants.

### Memorandum of Decision

MISHLER, District Judge.

Pursuant to a stipulation among the parties, the allegations of the complaint were deemed denied, and the trial of the action was advanced and consolidated with the hearing on the motion for a preliminary injunction in accord with Rule 65(a)(2) of the Federal Rules of Civil Procedure.

Plaintiff is a New York corporation having its principal place of business within the Eastern District of New York and engaged in the business of a common carrier by rail. The Brotherhood of Locomotive Engineers is the bargaining representative for approximately 300 engineers and motormen employed by the railroad. On February 21, 1967, plaintiff and the union entered into an agreement modifying their collective bargaining contract, said contract, as modified, to remain in effect until October 1, 1969, " * * * and thereafter until changed or modified in accordance with the provisions of the Railway Labor Act, as amended."[1]

---

1. Plaintiff's Exhibit No. 5A.

The individual defendants, George L. Clark, A. H. Davis and R. F. Starck, comprise the union's General Committee of Adjustment. Clark is the committee's general chairman.

The subject controversy stems from the institution of a new procedure for securing authorization to pass a stop signal within Pennsylvania Station, which is owned, operated and controlled by the Pennsylvania Central Transportation Company.

Prior to this spring, when an interlocking signal could not be changed from a stop aspect and no cause for detaining the train was known, either the conductor or engineer would establish direct or telephonic contact with the block operator, the official empowered to permit the train to proceed beyond the signal. The former was required to note the block operator's instructions on a clearance card, Form No. C, copies of which were given to the engineer or conductor, as the case might be, and the block operator.

On March 1st of this year, however, the Penn Central advised plaintiff that it intended to promulgate new rules to take effect upon April 28, 1968. Two weeks later, plaintiff was informed that the clearance cards would no longer be utilized, and that a block operator would give permission to pass a stop signal, or other instructions, verbally or by hand signal. Formal notification of the change in procedure was received on March 18th, and plaintiff was told that it would be required to conform to the new rules. Clark was advised of the situation shortly thereafter, and he registered a protest.

The new regulation was then embodied in plaintiff's General Order No. 224, copies of which were mailed and posted on all bulletin boards. On April 30th, however, after the new procedure had already been in effect for two days, Clark demanded a rescission of the order on the grounds that it was "vague, ambiguous and confusing;" asserted that an intolerable safety level had resulted; and added that as of midnight of that day the union would not permit its members to operate trains into and out of Pennsylvania Station until the situation was corrected.[2]

Plaintiff alleges that the union's threatened refusal to permit its members to operate trains into and out of Pennsylvania Station would constitute a violation of the existing collective bargaining agreement, would inflict irreparable harm upon the railroad, and would result in serious and irreparable damage to the public's safety and welfare by depriving the populace of vital transportation services. More specifically, the railroad contends that defendants' protests have created a controversy which is neither a "labor dispute" within the meaning of section 13(c) of the Norris-LaGuardia Act,[3] nor the kind of conflict to which the procedures set out in the Railway Labor Act were intended to apply.[4] Instead, the carrier maintains that it was acting within its legitimate managerial prerogative when it promul-

2. Letter of George L. Clark, dated April 30, 1968, Plaintiff's Exhibit No. 4.

3. The statute defines a "labor dispute" as follows:

(c) The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee. 29 U.S.C. § 113(c) (1964).

4. Section 2 of the Railway Labor Act indicates that its procedures were intended to be applied to disputes " * * * concerning rates of pay, rules, or working conditions * * * [and] disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules or working conditions." 45 U.S.C. § 151a (4) and (5) (1964).

gated General Order No. 224. Alternatively, plaintiff argues that if the present controversy is determined to be a labor dispute, it must be categorized as a "major dispute" under the Railway Labor Act, and defendants must exhaust the procedures detailed therein before resorting to self-help.

Defendants, in turn, charge that the general order is "vague, ambiguous and confusing" and assert that the elimination of the use of the clearance cards within Pennsylvania Station not only affects a change in the manner in which responsibility for an accident is pinpointed, but also results in an unsafe procedure. Upon oral argument, however, defendants admitted that the existing collective bargaining agreement does not refer to the carrier's operating rules, and appeared to take the position that if the pending matter is a labor dispute, it is a major dispute.

■ The court concludes that plaintiff has proved that the conventional prerequisites for the issuance of injunctive relief have been met, and that regardless of how the present controversy is classified such relief should be granted.

■ If the pending matter is not a "labor dispute,"[5] neither the Norris-LaGuardia Act nor the Railway Labor Act is operative. See, Rutland Ry. v. Brotherhood of Locomotive Eng'rs,

307 F.2d 21, 30 (2d Cir. 1962), cert. denied, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). The parties would not be required to follow the detailed procedures set forth in the latter statute, and the former would present no barrier to the issuance of equitable relief to prevent the threatened breach of contract and the resulting infliction of severe and irreparable harm.[6]

■ Generally, "major disputes" are disagreements in the bargaining process for new agreements, i. e., they arise either where there is no existing contract, or where one of the parties seeks to alter its terms. See, e. g., Brotherhood of R. R. Trainmen v. Chicago River & Ind. R. R., 353 U.S. 30, 33, 77 S.Ct. 635, 637, 1 L.Ed.2d 622 (1957); Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). If the subject controversy falls within this category, defendants have failed to utilize the Railway Labor Act's procedures applicable to such disputes. See, Rutland Ry. v. Brotherhood of Locomotive Eng'rs, supra, 307 F.2d at 31–32. Although plaintiff expended reasonable efforts in an attempt to confer with the defendants in good faith, the latter abruptly refused to enter into discussions in complete disregard of its statutory duties.[7] Accordingly, resort to self-help would be unwarranted, and the carrier could not be held to have failed

5. There are indications in some of the cases that if matters are admittedly within the realm of legitimate managerial prerogative, disagreements stemming from the exercise of such discretion are not labor disputes. See, Order of R.R. Telegraphers v. Chicago & N. W. R.R., 362 U. S. 330, 336, 80 S.Ct. 761, 765, 4 L.Ed. 2d 774 (1960); Detroit & Toledo Shore Line R.R. v. Brotherhood of Locomotive Firemen, 267 F.Supp. 572, 574 (N.D. Ohio 1967); Brotherhood of R.R. Trainmen v. New York Cent. R.R., 246 F.2d 114 (6th Cir.), cert. denied, 355 U.S. 877, 78 S.Ct. 140, 2 L.Ed.2d 107 (1957). Cf. Matter of Chicago North Shore & M. R.R., 147 F.2d 723 (7th Cir.) cert. denied, 325 U.S. 852, 65 S.Ct. 1089, 89 L.Ed. 1973 (1945). Nevertheless, the

courts have been moving toward the imposition of as comprehensive a duty to bargain under the Railway Labor Act as is prescribed by the National Labor Relations Act, 29 U.S.C. § 151 et seq. See, Order of R.R. Telegraphers v. Chicago & N. W. R.R., supra, 362 U.S. at 338, 80 S.Ct. at 765; Manning v. American Airlines, Inc., 329 F.2d 32, 35 (2d Cir.), cert. denied, 379 U.S. 817, 85 S.Ct. 33, 13 L.Ed.2d 29 (1964). See generally, Meltzer, The Chicago & North Western Case: Judicial Workmanship and Collective Bargaining, 1960 Sup.Ct.Rev. 113.

6. See, generally, Findings of Fact and Conclusions of Law.

7. 45 U.S.C. § 152, First, Second (1964).

in its reciprocal responsibilities. Cf. Long Island R. R. v. System Federation No. 156, 368 F.2d 50, 53 (2d Cir. 1966).

██ Moreover, even if this conflict were a "minor dispute," both parties have taken the position that if the court were to decide that their dispute should be so characterized,[8] the court may issue an injunction conditioned upon the submission of the controversy to the National Railroad Adjustment Board within a reasonable time. Cf. Westchester Lodge 2186, Brotherhood of Ry. and Steamship Clerks, etc. v. Railway Express Agency, Inc., 329 F.2d 748, 753 (2d Cir. 1964). See, also, Brotherhood of R. R. Carmen, Local 429 v. Chicago & N. W. Ry., 354 F.2d 786 (8th Cir. 1966).

Accordingly, plaintiff is entitled to judgment as demanded in the complaint. Plaintiff is directed to settle judgment on two (2) days' notice, and the terms of the restraining order are hereby extended until the time of the filing of a judgment pursuant to the terms of this memorandum of decision and order; and it is

So ordered.

### Findings of Fact and Conclusions of Law

The trial of this action having been advanced and consolidated with the hearing on plaintiff's application for a preliminary injunction, the court, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff is a New York corporation engaged in the business of a common carrier for hire and having its principal place of business in Jamaica, New York.

2. Each weekday plaintiff transports approximately 260,000 passengers, which number includes 180,000 one-way trips made by approximately 90,000 persons who regularly commute between their homes and their places of business in New York City.

3. The Brotherhood of Locomotive Engineers (Union) is an unincorporated association organized as a labor union and engaged in representing approximately 300 engineers and motormen (hereinafter referred to collectively as "engineers") employed by plaintiff.

4. George L. Clark is the General Chairman of the Union's General Committee of Adjustment.

5. A. H. Davis is the Vice-Chairman and R. F. Starck is the Secretary-Treasurer.

6. On February 21, 1967, plaintiff and the Union executed an agreement modifying their collective bargaining agreement wherein they concurred that the contract, as modified, would " * * remain in effect until October 1, 1969, and thereafter until changed or modified in accordance with the provisions of the Railway Labor Act, as amended."

7. Pennsylvania Station, located in the City of New York, is owned, operated and controlled by the Pennsylvania Central Transportation Company (Penn Central).

8. The operation of plaintiff's trains in and out of Pennsylvania Station is subject to the rules and regulations promulgated by the Penn Central.

---

8. "Minor disputes" concern disagreements over the meaning of an existing collective bargaining agreement in particular fact situations. Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R., supra. Most labor contracts are deemed to contain implicit understandings as to the legitimate extent of management's prerogative. Since it appears that the operating rules have not been the subjects of bargaining in the past, such an implied contractual provision may well exist in this case. See, Rutland Ry. v. Brotherhood of Locomotive Eng'rs, supra, at 307 F.2d 33–34; Norfolk & P. B. L. R.R. v. Brotherhood of R.R. Trainmen, Lodge No. 514, 248 F.2d 34, 41 (4th Cir. 1957), cert. denied, 355 U.S. 914, 78 S. Ct. 343, 2 L.Ed.2d 274 (1958); Cox & Dunlop, Regulation of Collective Bargaining by The National Labor Relations Board, 63 Harv.L.Rev. 389, 401 (1950).

9. On March 1, 1968, the Penn Central advised plaintiff that it intended to promulgate new rules governing the operation of its facilities, including Pennsylvania Station, said new rules to become effective at 12:01 A.M. on April 28, 1968.

10. On March 14, 1968, plaintiff was advised that the new rules applicable to the movement of trains in and out of Pennsylvania Station would conflict with Rule No. 629 of its Book of Rules.

11. Rule No. 629 of plaintiff's Book of Rules provided that:

[i]f an interlocking signal cannot be changed from Stop-signal, and should no cause for detaining a train be known, the block-operator upon permission of Superintendent of Transportation will authorize it to pass such Stop-signal by the use of Clearance Card Form C as thereon provided. Before issuing such card the Block operator must know that the switches are properly lined and signals governing routes that conflict with the one indicated on the card display their most restrictive indication.

12. The Penn Central's new rules eliminated the procedure whereby a Clearing Card Form C was required for passing a stop-signal, substituting for said form the use of verbal and hand signals.

13. On March 18, 1968, the Penn Central directed plaintiff to modify its rules to conform to the former's new regulations pertaining to operations within Pennsylvania Station.

14. Shortly after March 20, 1968, plaintiff advised Clark of the proposed change.

15. Clark protested the change.

16. On April 20, 1968, plaintiff mailed and posted General Order No. 224, which modified its rules to conform to the Penn Central's new procedure for the operation of trains within Pennsylvania Station.

17. General Order No. 224 provided as follows:

Penn Central Rules for Conducting Transportation, effective this date, do not provide for the use of Clearance Card Form "C".

Long Island Rail Road trains and engines operating in Zone A will be governed by the following procedure which has been established by the Penn Central to authorize movements previously requiring the use of the Clearance Card Form "C", which has been discontinued:

"Trains and engines must stop clear of interlocking signals displaying stop. When such signals cannot be changed to display a proceed aspect, authority to pass them at RESTRICTED SPEED, will be given by the block operator VERBALLY or by HAND SIGNAL after the conductor or engineer of the train involved has been verbally informed of the situation.

"Interlocking signals which are also the block signals governing the entrance to lines 1, 2, 3 and 4 must not be passed in stop position unless authorized by TRAIN ORDER."

18. Plaintiff's employees understood General Order No. 224.

19. Plaintiff's trains operated under the new procedure from April 28th until April 30th without any further complaints from defendants.

20. At approximately 12 o'clock noon on April 30th, Clark and Davis demanded the rescission of General Order No. 224.

21. Bernard G. Bower, plaintiff's Superintendent of Transportation, and Howard J. Bellis, plaintiff's Director of Personnel, conferred with Clark and Davis.

22. Bower asked Clark whether he wished to propose any change in the wording of General Order No. 224.

23. Clark took the position that the use of Clearance Card Form C should continue.

24. Plaintiff made every reasonable effort to negotiate the dispute and conferred with defendants in good faith.

25. Plaintiff was limited in its negotiations with defendants by the authority of the Penn Central to promulgate the rules and regulations which govern the operations of trains within Pennsylvania Station.

26. (a) The use of Clearance Card Form "C" was a method of fixing responsibility for injury to persons or damage to property and was unrelated to the safety factor in the operation of the signal system at Pennsylvania Station.

(b) The procedure instituted at midnight April 28th for passing a stop signal is not unsafe.

(c) Defendants failed to offer any substantial proof that the former procedure is safer than the present procedure.

27. (a) Defendants' claim that the procedure outlined in General Order No. 224 is unsafe is spurious.

(b) Defendants' claim that General Order No. 224 is ambiguous is spurious.

28. On April 30, 1968, Clark delivered a letter to Bellis by hand in which, on behalf of the Union, he advised Bellis that as of midnight of that day the Union would " *   *   * not permit its members to operate into or out of Pennsylvania Station *   *   *" unless the "situation" was corrected.

29. The threatened limited work stoppage would cause plaintiff irreparable damage, and would seriously interfere with business and the public's convenience.

*Conclusions of Law*

1. The court has jurisdiction under sections 1331 and 1337 of title 28, United States Code.

2. A refusal to operate trains into and out of Pennsylvania Station under the above circumstances would constitute a violation of the existing collective bargaining agreement and would either not constitute a labor dispute, or would contravene the provisions of the Railway Labor Act.

3. Plaintiff is entitled to judgment as demanded in the complaint.